UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SOOZI S., <br><br> Plaintiff, <br><br> v. <br><br> JOHN CARPENTER, also known as Sue Parker, <br><br> Defendant. | CASE NO. C07-5388BHS <br><br> ORDER DENYING PLAINTIFF'S MOTION TO ENLARGE TIME TO FILE RESPONSE AND GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) |

This matter comes before the Court on Plaintiff's Motion to Enlarge Time to File Response (Dkt. 8) and Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6) (Dkt. 5). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file, and finds the arguments of the parties suitable for disposition without oral argument.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The facts, as alleged in Plaintiff's complaint, are as follows: Plaintiff is a citizen and resident of the United Kingdom. Dkt. 1 at 3. In November of 2005, Plaintiff began an online relationship with an individual identifying herself as a bisexual female named "Sue Parker." *Id.* Plaintiff alleges that Sue Parker and Defendant John Carpenter are one in the

ORDER - 1

same. Plaintiff and Sue Parker developed an online, sexualized relationship. *Id.* Sue Parker claimed to be an experienced dominatrix and asked Plaintiff to become her "submissive sex slave in training." *Id.* at 4. Plaintiff agreed, and as part of her "training," underwent several acts at the direction of Sue Parker. *Id.* at 4-5. Sue Parker told Plaintiff that in order to become Sue Parker's submissive, she would fly to Montreal, Canada, take a bus to British Columbia, Canada, and lodge in a hotel room of Sue Parker's choosing. *Id.* at 5. While in the hotel room, Plaintiff was to be administered a "sleeping drug," blindfolded, and transported by van into Washington State. *Id.* at 5-6. Upon arrival in Washington, Plaintiff was to be placed in a holding cell for six months, examined, sterilized, and pierced before becoming "a servant and sexual slave" to Sue Parker. *Id.* at 6.

Plaintiff became concerned "that she might become the victim of criminal activities or forced to become a prostitute" and contacted a private investigator to investigate Sue Parker. *Id.* While under investigation, though not informed of the investigation, Sue Parker told Plaintiff that she was diagnosed with cervical cancer and would undergo surgery. *Id.* at 6-7.

On December 22, 2006, Plaintiff received an email from a third party informing her that Sue Parker had died as a result of surgical complications. *Id.* at 7. The private investigation of Sue Parker thereafter revealed that "Sue Parker" was an alias employed by John Carpenter in order to entice Plaintiff to come to the United States "for the purposes of sex, sex with others, or with an intent to do harm to Plaintiff." *Id.*

Plaintiff claims that she has suffered extreme emotional trauma, loss of sleep, listlessness, and inability to function properly at work. *Id.* Plaintiff seeks $43,210.40 as economic damages and $69,839.60 as non-economic damages. *Id.* at 8. Plaintiff also seeks the return or destruction of any photographic, digital, audio, or other images of Plaintiff. *Id.* at 13. Plaintiff asserts three causes of action: Violation of the Violence

1 Against Women Act, 43 U.S.C. § 13925, fraudulent misrepresentation, and intentional
2 infliction of emotional distress. Dkt. 1 at 8-12.
3       Defendant now moves to dismiss the complaint. Dkt. 5.

## II. MOTION TO ENLARGE TIME

Plaintiff moves for an order enlarging the time for responding to the motion. Dkt. 8. The Motion to Dismiss was originally noted for consideration on December 7, 2007, pursuant to Local Rule CR 7(d)(3). Plaintiff's response was due on or before December 3, 2007. On December 5, 2007, Plaintiff moved for an extension of time to file her response and simultaneously filed her response. Dkts. 7, 8. Plaintiff's counsel contends that the response was tardy because he was out of the office due to personal matters and because "the motion was received at an office email that [he] do[es] not open and attached to a file which did not come to [his] attention until recently." Dkt. 8-2 at 2.

Under Federal Rule of Civil Procedure 6, the Court "may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b). Plaintiff's counsel fails to offer evidence of excusable neglect. Pursuant to the Revised General Order In Re Provisions for Electronic Case Filing, "[p]articipation in the CM/ECF system . . . shall constitute consent to the electronic service of pleadings and other papers." The failure of Plaintiff's counsel to update his CM/ECF registration to include an email address that he accesses more frequently does not constitute excusable neglect, and the request for additional time to file a response is therefore denied.

## III. MOTION TO DISMISS

Motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require

ORDER - 3

1  detailed factual allegations but must provide the grounds for entitlement to relief and not
2  merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v.*
3  *Twombly,* 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a
4  claim to relief that is plausible on its face." *Id.* at 1974. When deciding a motion to
5  dismiss, the Court's consideration is limited to the pleadings. Fed. R. Civ. P. 12(d).[1]
6  While the Court has denied Plaintiff's request for additional time to respond, the Court
7  has nevertheless considered arguments offered in Plaintiff's untimely response.

8  **A.    VIOLENCE AGAINST WOMEN ACT**

9  　　　　Plaintiff's first claim of relief is brought under the Violence Against Women Act,
10 42 U.S.C. § 13925, *et seq*. Dkt. 1 at 8. Plaintiff contends that Defendant committed
11 criminal acts subjecting him to liability under 42 U.S.C. § 13981, which provides that "[a]
12 person . . . who commits a crime of violence motivated by gender . . . shall be liable to the
13 party injured, in an action for the recovery of compensatory and punitive damages,
14 injunctive and declaratory relief, and such other relief as a court may deem appropriate."
15 42 U.S.C. § 13981(c). This portion of the Violence Against Women Act was explicitly
16 ruled unconstitutional in 2000 when the Supreme Court held that neither the Commerce
17 Clause nor Section 5 of the Fourteenth Amendment provided Congress the authority to
18 enact 42 U.S.C. § 13981. *See U.S. v. Morrison*, 529 U.S. 598, 619, 627 (2000).

19 　　　　Plaintiff's attempts to avoid the unconstitutionality of this section are unavailing.
20 Plaintiff first contends that the Violence Against Women Act was amended after the
21 *Morrison* decision and therefore remains viable. Dkt. 7 at 3. Plaintiff cites no portion of
22 these amendments reviving the Violence Against Women Act's civil remedy, the portion
23 of the statute under which Plaintiff seeks relief.

24 　　　　Second, Plaintiff attempts to distinguish her case from *Morrison* because *Morrison*
25 involved a resident of Virginia and Plaintiff is not a resident of the United States.

---

[1] For this reason, the Court declines to consider the "declaration" accompanying Plaintiff's response. Moreover, the declaration is not signed under penalty of perjury and offers little factual detail beyond the allegations of the complaint.

ORDER - 4

*Morrison* ruled the civil remedy provision of the Violence Against Women Act unconstitutional on its face and held that Congress did not have the authority to enact the law. Plaintiff's presentation of a different factual scenario is inapposite to the unconstitutionality of the Violence Against Women Act. Defendant's Motion to Dismiss (Dkt. 5) should be granted in this regard.

**B.    FRAUDULENT MISREPRESENTATION**

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

A claim of fraudulent misrepresentation requires proof of the following nine elements: (1) a representation of an existing fact; (2) the fact is material; (3) the fact is false; (4) the defendant knew that the fact was false or was ignorant as to its truth; (5) the defendant intended the plaintiff to act on the fact; (6) the plaintiff did not know that the fact was false; (7) the plaintiff relied on the truth of the fact; (8) the plaintiff had a right to rely on the fact; and (9) the plaintiff suffered damages. *Baertschi v. Jordan*, 68 Wn.2d 478, 482 (1966). Defendant moves to dismiss, contending that Plaintiff cannot satisfy the fifth and eighth elements. Dkt. 5 at 7.

First, Defendant contends that dismissal is proper because had Defendant intended for Plaintiff to rely on his representations, he would not have informed Plaintiff, through a third party, that Sue Parker was deceased. Dkt. 5 at 7. Defendant's argument on this point is extremely brief and essentially asks the Court to rule that the only inference to be drawn from Defendant informing Plaintiff that Sue Parker was dead is that Defendant did not intend for his representations to be relied upon. It is also plausible, however, that Defendant told Plaintiff that Sue Parker was dead in an effort to ameliorate the effects of Plaintiff's reliance on Defendant's representations regarding Sue Parker.

Second, Defendant contends that Plaintiff did not have a right to rely on representations made by Defendant. Dkt. 5 at 8. The complaint does not allege facts

sufficient to demonstrate that Plaintiff had a right to rely on Defendant's representations, offering only the conclusory allegation that "Plaintiff had a right to rely on [Defendant's] representations." Dkt. 1 at 11; *see Bell Atlantic Corp.,* 127 S. Ct. at 1965 ( "formulaic recitation of the elements of a cause of action will not do"). In addition, Plaintiff's hiring of a private investigator to investigate Defendant reveals that she did not fully rely, or questioned her right to rely, on Defendant's representations. Plaintiff offers no facts that would justify her reliance on representations made over the internet by a stranger. For this reason, dismissal of Plaintiff's misrepresentation claim is proper.

## C.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Intentional infliction of emotional distress, or outrage, requires proof of three elements: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) severe emotional distress to the plaintiff. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003). The offending conduct must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 196. The tort of outrage does not encompass mere insults, indignities, threats, or annoyances. *Id.* A plaintiff is assumed to be "hardened to a certain degree of rough language, unkindness, and lack of consideration." *Id.* Whether particular conduct rises to the requisite level of outrageousness is "ordinarily a question of fact for the jury." *Dombrosky v. Farmers Ins. Co. of Washington*, 84 Wn. App. 245, 261 (1996). The Court, however, may dismiss a claim if reasonable minds could not differ as to whether the alleged conduct was sufficiently extreme. *See id.* at 261-62.

Defendant's proposal that Plaintiff allow herself to be drugged, sterilized, and hidden in a secret location may be deemed extreme and outrageous by a majority of the population. This is not the conduct that forms the basis of Plaintiff's outrage claim, however. Plaintiff was apparently amenable to Defendant's proposal and was concerned only that complying with Defendant's instructions would culminate in her becoming a

prostitute, rather than a "servant and sexual slave" or "submissive" to Sue Parker. Dkt. 1 at 6.

Rather, assuming all alleged facts to be true, Defendant's offending conduct was dishonesty, conveyed in internet communications, about his gender, identity, and death. Reasonable minds could not differ; the offending conduct is not outrageous, extreme, atrocious, or intolerable and does not justify a claim for outrage. The motion should therefore be granted as to Plaintiff's outrage claim.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiff's Motion to Enlarge Time to File Response (Dkt. 8) is **DENIED**, Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6) (Dkt. 5) is **GRANTED**, and Plaintiff's claims are **DISMISSED without prejudice**.

DATED this 2nd day of January, 2008.

BENJAMIN H. SETTLE
United States District Judge